MacHENRY v. DWELLING BUILDING & LOAN ASS'N et al.

(District Court, E. D. Pennsylvania. July 11, 1919.)

No. 1839.

BANKRUPTCY ☞163, 178(1)—PREFERENCE—FRAUDULENT TRANSFER OF PROPERTY.

Various transactions within four months prior to the bankruptcy of a corporation as the obviously intended result of which a general creditor obtained mortgage security *held* to render the mortgage voidable as a preference as to the creditor's interest therein, and also as a fraudulent transfer of property except as to a part of the consideration which bankrupt received in cash from the mortgagee.

In Equity. Suit by Winfield S. MacHenry, trustee in bankruptcy of the Bakers' Baking Company, against the Dwelling Building & Loan Association and the Dwelling Building & Loan Association, trustee for Frank J. McSorley. Decree for complainant.

H. Edgar Barnes and Owen J. Roberts, both of Philadelphia, Pa., for plaintiff.

Richard T. McSorley and Graham & Gilfillan, all of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This suit was brought by the trustee in bankruptcy of the Bakers' Baking Company against the Dwelling Building & Loan Association and the Dwelling Building & Loan Association, trustee for Frank J. McSorley, for a decree declaring a mortgage of the bankrupt to the defendant, dated December 5, 1917, and recorded September 7, 1917, a transfer and incumbrance of the bankrupt's property under Bankruptcy Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. § 9651), made for the purpose of hindering, delaying, and defrauding the creditors of the bankrupt, and void as an unlawful preference under section 60b (section 9644). The mortgage covered all of the real estate of the Bakers' Baking Company, together with the entire machinery and equipment thereon, and was given within four months of January 4, 1918, the date of filing the petition in bankruptcy under which the company after a jury trial and a verdict against it was adjudicated a bankrupt on May 15, 1918.

The circumstances under which the mortgage was created were as follows:

The company was incorporated under the laws of Delaware in February, 1916, and was engaged in a wholesale and retail baking business with an authorized capital of $150,000. Its real estate was incumbered by two mortgages amounting to $100,000. In January, 1917, John J. Coyle became interested in the company, and made an offer to purchase 574½ shares of its stock of a par value of $57,450 for the sum of $33,000, and also to become the accommodation indorser on the notes of the company to the amount of $10,000. Cash was paid to the company by Mr. Coyle on account of this agreement of purchase of stock, and judgment notes were executed and delivered to him for

the amount of such payments. In June, 1917, it was agreed that Mr. Coyle be released from his obligation to purchase the stock, and 805 shares of stock were issued to him as collateral for cash advanced and to be advanced by him upon judgment notes of the company. On August 8, 1918, there was owing to Mr. Coyle under this arrangement $19,925 loaned to the company, and he held 27 judgment notes in varying sums and of various dates for that amount.

On August 22, 1917, Mr. Coyle having made demand for $27,425, as the amount of judgment notes of the company held by him for money loaned, a resolution was adopted by the board of directors at a meeting on that date, instructing the treasurer to pay the amount of the judgment notes, with interest, out of any funds coming into his hands as treasurer upon the condition that Mr. Coyle return the notes held by him, canceled, and return the stock held by him as collateral. The company was not in financial condition to pay the notes. It was being pressed by creditors, and its business for several months was showing a loss. It had no funds in its treasury to meet its current liabilities. On September 5th, the company authorized the execution and delivery of a mortgage in the sum of $30,000 to the Dwelling Building & Loan Association, and at a meeting upon the same date the Dwelling Building & Loan Association authorized the loan to the company upon a mortgage in that amount. The Dwelling Building & Loan Association had no funds available to place the loan. An arrangement had been made between Mr. Coyle and one George H. Brooks about August 23, 1917, whereby Mr. Coyle was to transfer the judgment notes to Mr. Brooks. Mr. Brooks had no cash to purchase the notes with their collateral from Mr. Coyle, but he owned stock of the Electric Light Company of Sea Isle City, and had had stock in the Belle Union Coal Mining Company, in which he had suffered a loss of from $11,000 to $12,000. Mr. Coyle agreed to purchase the Electric Light stock and credit Mr. Brooks with the amount he had lost in the Belle Union Mining Company stock from $11,000 to $12,000, and as a result of this arrangement Mr. Coyle gave Mr. Brooks his check for $21,000 to put him in funds to buy the judgment notes. Mr. Brooks deposited this amount in the North Penn Bank, and immediately drew his check to Mr. Coyle for the same amount, about $21,000, as purchase price of Mr. Coyle's judgment notes. The judgment notes were delivered to the Building Association September 15, 1917; it having agreed to issue to Mr. Brooks therefor 100 shares of full paid Building Association stock. There being some difficulty with the banking commissioner on account of this arrangement, Mr. Brooks was given the note of the association, but later the 100 shares of full-paid stock and a note for $359.91 were issued and delivered to him. The Building & Loan Association, now being holder of the judgment notes issued to Mr. Coyle, made settlement with the Bakers' Baking Company for the amount of the mortgage loan as follows:

It delivered to the company the judgment notes which, with interest, amounted to $20,359.91, charged it with dues and interest upon the mortgage loan, $1,290, and made cash payments extending in va-

rious amounts from September 11 to October 11, 1917, amounting to $8,350.09. Mr. Brooks, as holder of the paid-up stock certificate of the Building & Loan Association, transferred the same on January 2, 1918, together with the note for $359.91 to Frank J. McSorley. In consideration of the payment of $8,890.09 by Frank J. McSorley to the Building & Loan Association on February 23, 1918, and the retirement of the stock which had been issued to Mr. Brooks, and the surrender of the note, the Building & Loan Association, on February 23, 1918, as mortgagee, made a declaration of trust of the mortgage to Mr. McSorley. Mr. Brooks, in consideration of the transfers of the stock and note to Mr. McSorley, who was secretary of the Dwelling Building & Loan Association, was to receive a two-thirds interest in the mortgage. Mr. Brooks' interest in the mortgage was a secret one, undisclosed of record in the declaration of trust. In February, 1918, Mr. Coyle purchased the interest of Mr. Brooks in the mortgage by paying back to him the proceeds of the sale of the Electric Light stock, and, as he (Mr. Coyle) testified, "returned Brooks to the position of having lost $11,000 to $12,000 on his former stock ownership in the Belle Union Coal Mining Company."

At the time of the trial, Mr. Coyle was the owner of two-thirds interest in the mortgage of $30,000, amounting to $20,000.

The bill is based upon both sections 60b and 67e. It is provided in 60b that if a debtor has, within four months before the filing of the petition in bankruptcy, being then insolvent, made a transfer which the person receiving has reasonable cause to believe would effect a preference, the transfer shall be voidable, and the trustee in bankruptcy may recover the property or its value. Despite the circuitous, or more properly labyrinthian, arrangement by which the security of the mortgage was substituted for the notes originally held by Mr. Coyle, it is impossible to reach any other conclusion than that the present situation, in which Mr. Coyle is the beneficial owner of the mortgage to the extent of $20,000, is the result of a cleverly conceived plan to create a preference in his favor. The transfer of the notes to Mr. Brooks through an exchange of checks to enable Mr. Brooks to appear as the holder to transfer them in turn to the Building & Loan Association, the issuing temporarily of the note of the association to Mr. Brooks, the exchange of the note for the paid-up shares of stock, the transfer of the stock by Mr. Brooks to Mr. McSorley and its cancellation, in consideration of which a two-thirds interest in the mortgage secretly went to Mr. Brooks, and in turn from Mr. Brooks to Mr. Coyle in consideration of the payment to Mr. Brooks of the value of the stock he had sold to Mr. Coyle and the wiping out of the consideration of $11,000 to $12,000 with which Mr. Coyle had credited Mr. Brooks in the Belle Union Coal Mining Company transaction, leave the trail so distinctly marked that it is impossible not to follow it in spite of its devious twists and turns.

The evidence establishes that the Baking Company was at the time of the creation of the mortgage insolvent, and that the person receiving the beneficial interest in the preference, Mr. Coyle, had at the time reasonable cause to believe that the enforcement of the transf

would effect a preference. If the relief were to be based solely upon section 60b, however, it would involve a decree for the recovery of the property or its value from one not a party to the record. It remains, therefore, to consider whether the evidence presents a case for relief under section 67e. Section 67e provides that if a debtor within four months before the filing of the petition in bankruptcy makes any transfer or incumbrance on his property, "with the intent to hinder, delay, or defraud his creditors, or any of them," it shall be null and void except as to purchasers in good faith and for a present fair consideration. As was stated by Mr. Justice Brandeis in Dean v. Davis, 242 U. S. at page 444, 37 Sup. Ct. at page 131, 61 L. Ed. 419, in discussing the sections now under consideration:

"But under section 67e the basis of invalidity is much broader. It covers every transfer made by the bankrupt 'within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them' 'except as to purchasers in good faith and for a present fair consideration.' As provided in section 67d only 'liens given or accepted in good faith and not in contemplation of or in fraud upon this act' are unassailable. A transfer the intent (or obviously necessary effect) of which is to deprive creditors of the benefits sought to be secured by the Bankruptcy Act 'hinders, delays or defrauds creditors' within the meaning of section 67e. Van Iderstine v. National Discount Co., 227 U. S. 575, 582 [33 Sup. Ct. 343, 57 L. Ed. 652], points out the distinction between the intent to prefer and the intent to defraud. A transaction may be invalid both as a preference and as a fraudulent transfer. It may be invalid only as a preference or only as a fraudulent transfer. Making a mortgage to secure an advance with which the insolvent debtor intends to pay a pre-existing debt does not necessarily imply an intent to hinder, delay, or defraud creditors. The mortgage may be made in the expectation that thereby the debtor will extricate himself from a particular difficulty and be enabled to promote the interest of all other creditors by continuing his business. The lender who makes an advance for that purpose with full knowledge of the facts may be acting in perfect 'good faith.' But where the advance is made to enable the debtor to make a preferential payment with bankruptcy in contemplation, the transaction presents an element upon which fraud may be predicated. The fact that the money advanced is actually used to pay a debt does not necessarily establish good faith. It is a question of fact in each case that the intent was with which the loan was sought and made."

In the present case, except as to the actual sums of money paid by the Building & Loan Association amounting to $8,350.09, the obvious effect of the acts of the Bakers' Baking Company in mortgaging its property was to so incumber it that the antecedent indebtedness represented by Mr. Coyle's notes would be secured by mortgage, and thereby the other creditors of the Bakers' Baking Company would be deprived of the opportunity afforded by the Bankruptcy Act to share equally in the company's assets. This was the actual clear intent and purpose of the creating of the mortgage. The Building & Loan Association by the issue of its note to Brooks and the subsequent issue to him as substitute therefor of its paid-up stock became the holder of the notes. These notes can in no sense be considered a present, fair consideration. They were not a present consideration, for they represented an antecedent debt. The haste with which the mortgage was authorized and executed immediately upon its authorization, while in offices in the same building the defendant was authorizing the loan,

and the subsequent arrangement and knowledge of the merely colorable transactions between Mr. Coyle and Mr. Brooks, as appears by the minutes of the defendant company, is sufficient to remove any doubt that the consideration was not a fair one, and its effect was a fraud upon the creditors of the Baking Company. The cash consideration of $8,350.09 went into the treasury of the Bankrupt Company, and was presumably available for the payment of its creditors. To that extent the lien of the mortgage should be held valid.

### Rulings on Findings of Fact and Conclusions of Law.

The plaintiff's requests for findings of fact, filed herewith, are allowed except as follows:

(67a) Declined as not being a request for a finding of fact.

(72) Declined.

(74) Declined as to the conclusions in the first part of the request before paragraph (a). Paragraphs (a), (b), (c), (d), (e), (f), (g), (h), (i), and (j) are found as facts.

(87) Declined.

The plaintiff's requests for conclusions of law, filed herewith, are allowed except as follows:

(11) Allowed except as to cash payment as stated in the opinion.

The defendant's requests for findings of fact, filed herewith, are allowed except as follows:

(12) Declined.

(19) Declined.

(21) Declined.

(24) Declined.

(25) Declined.

(27) Declined.

(28) Declined.

(33) Allowed except that the word "subsequent" in the latter part of the request is stricken out.

(34) Declined.

(35) Declined.

The defendant's requests for conclusions of law, filed herewith, are declined except as to Nos. 1 and 2, which are allowed.

A decree may be entered, declaring the mortgage fraudulent, null, void, and of no effect as to all the amount thereof in excess of the cash payments made, with dues and unpaid interest upon the amount of cash paid.